IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. Civ. 2:08-cr-0448 JAM |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE |
| v. | |
| MARIO RAYMOND ESPINOZA, | |
| Defendant._____/ | |

This matter is before the Court on Defendant Mario Raymond Espinoza's ("Defendant") motion to suppress all evidence obtained during a seizure and search in alleged violation of the Fourth Amendment. The United States of America (the "Government"), opposes the motion. On September 22, 2009, the Court held a hearing regarding Defendant's motion to suppress evidence. On September 29, 2009, the Government filed supplemental declarations in support of its opposition. For the following reasons, the Court GRANTS Defendant's motion to suppress evidence seized from his home.

I. FACTUAL BACKGROUND

On September 8, 2008, Elk Grove Police Department officers responded to an assault with weapons call at 7207 Seasons Drive in Elk Grove.  Gov't Opp. Brief, Doc. # 21 ("Gov't Opp.") at 2. Defendant's neighbor reported that Defendant had been drinking and shooting his gun out the window of his residence.  Id.  The neighbor also reported that Defendant lived alone and possibly had multiple weapons inside his residence.  Id.  The neighbor reported that the gun sounded like a .22 caliber or a high-powered pellet gun.  Id.  When the officers arrived at Defendant's residence, they observed that the front window was shattered.  Id.  The officers made several attempts to call Defendant on the phone.  Id.  After making contact, Defendant did not agree to exit his home, but nonetheless appeared on the front lawn.  Def's Mot., Doc. # 20, at 2.  He stumbled and appeared disoriented.  Id.

Defendant was ordered to lie on the ground.  Id.  After he did so, Defendant was handcuffed, escorted to a patrol car, asked what he had done and if he had any weapons.  Id. at 3. Defendant allegedly replied that he had done nothing, and that he did not have any weapons.  Gov't Opp. at 3.  Defendant was then locked in the back seat of a police car.  Def's Mot. at 3. The officers proceeded to enter and search Defendant's home. Id.  The officers did not find any other people, but did

2

discover a .357 magnum revolver on a television tray in the living room, a .44 caliber revolver between the mattress and the box spring in the master bedroom, and a .38 caliber revolver between the mattress and the wall in the master bedroom.  <u>Id.</u>  The officers did not obtain a warrant or Defendant's consent to search the home prior to entering.  <u>Id.</u>

II. OPINION

A.  <u>Legal Standard</u>

The Fourth Amendment protects individuals against unreasonable searches and seizures.  U.S. CONST. amend. IV.  When a search or seizure is conducted without a warrant, the government must establish, by a preponderance of the evidence, that it did not violate the Fourth Amendment.  <u>See</u> <u>United States v. Valencia</u>, 24 F.3d 1106, 1108 (9th Cir. 1994).  Evidence resulting from an unconstitutional search or seizure cannot be admitted as proof against the victim of the search, and therefore must be suppressed.  <u>See</u> <u>Wong Sun v. United States</u>, 371 U.S. 471, 485 (1963).

B.  <u>Government's Request For An Evidentiary Hearing</u>

At the September 22, 2009 hearing regarding Defendant's motion to suppress, the Government requested that this Court conduct an evidentiary hearing on the matter prior to issuing an order.  After considering the Government's request, this Court finds that an evidentiary hearing would not add anything to the

information already before the Court.  First, Defendant, the moving party, did not request a hearing and accepts the facts as set forth in the police reports.  As such, there are no factual disputes based on the written reports.  Second, the Government did not have witnesses available at the September 22, 2009 hearing.  Although this appears to be a result of an apparent misunderstanding, if it believed there was a factual dispute the Government could have come prepared with witnesses to the scheduled hearing.  Finally, the Government was permitted to submit supplemental declarations in support of its opposition and no new facts have been alleged in such declarations, except for the declaration of Officer Audrey Haug.

   Officer Haug contends that prior to the search, Defendant was asked if anyone else was inside the residence and that Defendant did not answer and was uncooperative.  However, no such fact is found in the police report despite the fact that police officers are trained to put all material, significant facts in their reports.  Including this fact in a declaration over a year after the incident rather than in the police reports makes the fact less believable or credible.  As such, this Court finds it can still decide the motion without the need for live testimony in that such testimony would not add anything to the information already before the Court.  Accordingly, this Court denies the Government's request for an evidentiary hearing.

C.  <u>Warrantless Arrest of Defendant</u>

Defendant argues the Court should suppress the firearms found in the house because police arrested Defendant without a warrant.  Defendant argues that the police may not arrest a person in his home without a warrant unless exigent circumstances exist.  <u>Minnesota v. Olson</u>, 495 U.S. 91, 100 (1990).  Absent exigent circumstances, the Court must suppress evidence obtained as a result of a warrantless arrest in a home. <u>Id.</u>, at 100-101.

Here, however, Defendant was not arrested in his home. Defendant walked out of his house voluntarily and was subsequently ordered to lie on the ground, handcuffed, and arrested.  Thus, the proper determination is whether police had probable cause to arrest once Defendant came outside.  To determine whether probable cause exists to support a warrantless arrest, the Court examines whether the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe a suspect has committed, is committing, or is about to commit a crime.  <u>United States v. Greene</u>, 783 F.2d 1364, 1367 (9th Cir. 1986).

Before arresting Defendant, the officers had received a telephone call that reported Defendant had been drinking and had fired shots outside the window of his residence earlier in the afternoon.  When the officers arrived on the scene Defendant's

neighbor told the officers that Defendant had fired a gun which sounded like a .22 caliber or high powered pellet gun.  The officers observed that the front window of Defendant's residence was shattered.  When Defendant exited his residence and appeared on the front lawn, he was stumbling and appeared disoriented.  The Court concludes that these facts, taken together, would lead a prudent person to believe Defendant was probably involved in firing shots outside his window into the neighborhood.  Thus, the Court finds the officers did have probable cause to arrest Defendant once he had come outside his home.  Accordingly, the warrantless arrest of Defendant was legal.

D.   Warrantless Search of Defendant's Home

   Defendant argues that the Court should suppress the firearms discovered in his home because the warrantless search of his home violated the Fourth Amendment and no exceptions to the general warrant requirement were present.

   The Fourth Amendment guarantees the right to be free from unreasonable search and seizure.  As a general rule, therefore, "entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant."  Steagald v. United States, 451 U.S. 204, 211, 101 S. Ct. 1642, 68 L. Ed. 2d 38 (1981).  Evidence that is seized in violation of a defendant's Fourth Amendment rights is inadmissable in court and must be excluded.  Mapp v. Ohio, 367

U.S. 643, 654-55 (1961).  In this case, it is undisputed that the officers entered the home on September 8, 2008, and subsequently seized firearms found in the home without securing a warrant.

There are, however, various exceptions to the general warrant requirement.  First, there are two "exceptions to the warrant requirement for home searches" based on the urgency of the situation: "exigency and emergency."  <u>United States v. Martinez</u>, 406 F.3d 1160, 1164 (9th Cir. 2005).  In addition, consent to enter and search will also abrogate the warrant requirement.  <u>Steagald</u>, 451 U.S. at 211.  It is undisputed that Defendant did not consent to the search of his home.  Rather, the Government argues that exigency/emergency justified the officers' search of Defendant's home.

Under the exigency doctrine, a warrantless search of a home "is permitted if there is probable cause to believe that contraband or evidence of a crime will be found at the premises and that exigent circumstances exist."  <u>Martinez</u>, 406 F.3d at 1164.  The Ninth Circuit has defined "exigent circumstances" as those which "would cause a reasonable person to believe that entry . . . was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts."  <u>Id</u>. (citing

7

United States v. McConney, 728 F.2d 1195, 1199 (9th Cir. 1984) (en banc) (abrogated on other grounds)).  There must be a "substantial risk [that] would arise if the police were to delay a search until a warrant could be obtained."  United States v. Reid, 226 F.3d 1020, 1027-28 (9th Cir. 2000) (quoting United States v. Gooch, 6 F.3d 673, 679 (9th Cir. 1993)).

    Similarly, the emergency doctrine provides that "if a police officer, while investigating within the scope necessary to respond to an emergency, discovers evidence of illegal activity, that evidence is admissible even if there was not probable cause to believe that such evidence would have been found."  Martinez, 406 F.3d at 1164 (quoting United States v. Cervantes, 219 F.3d 882, 888 (9th Cir. 2000)).  This exception has three requirements: "(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property. (2) The search must not be primarily motivated by intent to arrest and seize evidence. (3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched." Id.

    The Court is not persuaded that either the exigency or emergency exceptions to the warrant requirement justify the officers entering Defendant's home.  Significantly, both of those exceptions require some amount of urgency, and the

Government has failed to show that any such circumstances existed in this case.  As Defendant argues, there were no exigent circumstances or public safety reasons giving rise to an emergency/exigent circumstance to justify entry into the house.  The cases cited by the Government can be distinguished.  Cf. United States v. Russell, 436 F.3d 1086 (9th Cir. 2006)(Defendant made two calls to police for emergency assistance, he gave two different names in the calls, and he led police to believe that there was another person involved in the shooting); also cf. Brigham City v. Stuart, 547 U.S. 389 (2006)(Officers observed an altercation inside the house and had a reasonable basis for believing both an injured person may need help and that the violence they observed was just beginning and needed to be stopped).  Under similar circumstances to the instant case, the Ninth Circuit found police warrantless entry into a tent was illegal.  See United States v. Gooch, 6 F.3d 673 (9th Cir. 1993).  Defendant's home deserves more protection.

    In addition, the Declaration of Officer Haug that Defendant was asked if anyone else was in the house before police entered is not credible.  Even if the Court found this fact to have been clearly established it would not have changed the Court's opinion that the warrantless search was illegal because there are no objective facts to support the officer's claim that this was an exigent circumstance.  Here, too much time had passed for

this to be an exigent or emergency circumstance.  The shooting was reported to have occurred at 4:00 p.m. and was not called in to the police until approximately three hours later (6:58 p.m.). While the police arrived at Defendant's residence shortly after receiving a call about this incident (7:02 p.m.), they waited approximately 30 minutes before approaching Defendant's house (7:32 p.m.) and another 14 minutes passed before they had contact with Defendant outside his home (7:46 p.m.). In short, nearly four hours had passed between the time of the alleged incident and Defendant's arrest. Moreover, there was no information that anyone other than Defendant lived at the residence and no information that Defendant had guests in the house.  Further, Defendant clearly posed no threat to the police officers since he was drunk, handcuffed and in the back of a police car.  There was no reason why the police officers could not have delayed the search until they obtained a search warrant.  Accordingly, the Court finds that the Government has failed to establish that Defendant's Fourth Amendment rights were not violated when the officers entered Defendant's home without a warrant.  As such, the firearms seized as a result of the search cannot be admitted as proof against Defendant and therefore, must be suppressed.  See Wong Sun, 371 U.S. at 485.

E.  Defendant's Statements Made Without a Miranda Warning

Finally, Defendant seeks to suppress the statements he made to Officer Villarreal on the basis that the statements were obtained in violation of his Fifth Amendment rights, as guaranteed by Miranda v. Arizona, 384 U.S. 436 (1966).  The Court declines to reach the Miranda issue at this time, however Defendant is entitled to raise the issue at a later juncture if necessary.

## III. ORDER

For the above reasons, the Court GRANTS Defendant's motion to suppress evidence seized in his home. A further status conference in this case is set for Tuesday November 3, 2009 at 9:30 a.m. in Courtroom 6.

IT IS SO ORDERED.

DATED: October 15, 2009

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE